

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00205-CR

_____

THOMAS FALERO, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. F18-2033-362

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. Introduction

On May 14, 2018, Denton Police Officers Craig Fitzgearld[1] and Jeff Laughlin received an anonymous tip about narcotics activity in Room 10 at the Holiday Lodge Hotel. They drove their unmarked vehicle to the hotel, a location well-known for drug activity, and parked outside of Room 10. Less than five minutes after they arrived, they saw three people that they recognized, including Appellant Thomas Falero.

When Officer Fitzgearld asked the trio if they had any drugs on them, Falero replied that he had some marijuana. Officer Fitzgearld then asked him where it was, and Falero began rummaging around inside an old white car. Officer Fitzgearld said that because Falero's movements were "kind of frantic and nervous," he handcuffed Falero, and then he and Officer Laughlin searched him. They found roughly 20 grams of methamphetamine in a baggie in Falero's right pocket.

Falero was indicted for possession with intent to deliver a controlled substance in an amount of 4 grams or more but less than 200 grams, *see* Tex. Health & Safety Code Ann. § 481.112, and he moved to suppress the evidence, complaining that the

---

[1]Officer Fitzgearld retired from the Denton Police Department after 32 years of service, and at the time of the trial, he was working for the Denton County Sheriff's Department as a warrant deputy.

uncorroborated, anonymous tip did not provide the reasonable suspicion necessary to detain him. The trial court denied his motion after a hearing.

During the charge conference, Falero sought an Article 38.23 instruction "regarding the legality of [his] original detention and search" and objected to the inclusion in the jury charge of the statement, "Methamphetamine is a controlled substance," complaining that it was an improper comment on the evidence. The trial court overruled his objections. After the jury found Falero guilty, he pleaded true to the enhancement allegations,[2] the jury assessed his punishment at 30 years' confinement, and the trial court entered judgment on the verdict.

In three issues, Falero complains that the trial court erred by denying his motion to suppress and by overruling his jury charge complaints. We affirm.

## II. Suppression

In his third issue,[3] Falero argues that the trial court erred by denying his motion to suppress.

---

[2]Falero's indictment contained enhancement paragraphs alleging prior drug-related felony convictions.

[3]If the State's primary evidence in support of Falero's conviction—the methamphetamine—should have been suppressed, then Falero would be entitled to a reversal of the trial court's judgment; thus, we address his third issue first. *Compare Love v. State*, 543 S.W.3d 835, 857–58 (Tex. Crim. App. 2016) (concluding after constitutional harmless error analysis that improperly-admitted evidence's probable impact was great but remanding for new trial in murder case in which there was other evidence that could support conviction), *with Arteaga v. State*, 521 S.W.3d 329, 340–41 (Tex. Crim. App. 2017) (stating that the remedy for harmful jury charge error is reversal and remand unless the harm can be remedied by reforming the judgment).

3

**A. Suppression Hearing**

At the beginning of the hearing, the State stipulated that the search of Falero's person was warrantless, and the parties agreed that the dispute focused on the initial encounter and pat-down.

Officer Fitzgearld, the only witness who testified during the suppression hearing, stated that on May 14, 2018, he and Officer Laughlin had received a Crime Stopper's tip via email about narcotics activities in Room 10 at the Holiday Lodge Hotel, an area that he knew was frequented by drug sellers and users. The tip just stated the location; it did not state how many people were involved or their races or sexes, and it did not provide any clothing descriptions of those involved or descriptions of their vehicles.

The officers went to the hotel and observed Room 10 from their unmarked vehicle in the parking lot. They had been there for "maybe five minutes" when they saw Falero, Nancy Alvarado, and Josh Reed—all three of whom were familiar to the officers, and vice versa[4]—come out of Room 10. The officers stepped out of the vehicle and made contact with the trio by walking up to them and telling them that they had received a tip about narcotics activity. On cross-examination, when asked what words he used to get Falero to stop and speak with him, Officer Fitzgearld

---

[4]Officer Fitzgearld, having been a police officer for 32 years in Denton, acknowledged that he was very well known by the people in the narcotics community.

replied, "I don't recall. I've known him for a long time, and usually I just walk up to him and have a conversation with him."

After Falero told Officer Fitzgearld that he had some marijuana, Falero started frantically rummaging through his car. Officer Fitzgearld asked Falero to get out of the car because Falero's actions—which could have been to retrieve something from or to place something inside of the vehicle—were making the officer nervous. Officer Fitzgearld said that at that point, he already had probable cause to search the vehicle and to search Falero because of his admission that he had marijuana.

Officer Fitzgearld turned on his body camera around the time that Falero re-emerged from the car. The trial court viewed the body camera video. The body camera video shows the open driver's side door of a white four-door vehicle and Officer Fitzgearld quickly frisking Falero's left pocket before Falero turns to face the vehicle and to put his hands on the roof. Officer Fitzgearld pats down Falero's left side again before putting Falero in handcuffs, telling him to relax, that he is just going to detain him because Falero is making him nervous. While he fastens the handcuffs on Falero, Officer Fitzgearld asks, "Where's the weed at, you said?" Falero replies, "Man, I thought it was in the car." Officer Fitzgearld patted down Falero's left side, and Officer Laughlin patted down Falero's right side and found the methamphetamine. The trial court denied Falero's motion to suppress.

**B. Standard of Review and Applicable Law**

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

There are three types of police–citizen interactions: (1) consensual encounters, which do not implicate the Fourth Amendment; (2) investigative detentions, which are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, which are reasonable only if supported by probable cause. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013)

With regard to consensual encounters, police officers are as free as any other citizen to approach and ask for information or cooperation, and while such consensual encounters may be uncomfortable, they are not Fourth Amendment seizures. *Id.* No bright-line rule governs when a consensual encounter becomes a detention. *Id.* Rather, courts must take into account the interaction's totality of the circumstances to decide whether a reasonable person would have felt free to ignore

6

the police officer's request or to terminate the consensual encounter. *Id.* If ignoring the request or terminating the encounter is an option, then no Fourth Amendment seizure has occurred. *Id.* at 668. But if an officer through force or a show of authority succeeds in restraining a citizen in his liberty, the encounter is no longer consensual; it is a Fourth Amendment detention or arrest, subject to Fourth Amendment scrutiny. *Id.* We review de novo the question of whether the particular facts show that a consensual encounter has evolved into a detention. *Id.*

An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Id.*

## C. Application

Falero argues that the Fourth Amendment's reasonable-suspicion standard required the officers to have more information than a location-only anonymous tip in order to detain him. However, he ignores the fact that although an anonymous tip is what initially led the officers to the hotel, the trial court could have found that his

initial conversation with the officers, during which he told them that he had marijuana, was a consensual encounter. *See Wade*, 422 S.W.3d at 667. The trial court was entitled to find credible Officer Fitzgearld's testimony that he and Falero knew each other and that they were accustomed to speaking with each other. *See id.*

When Falero, who was already known to Officer Fitzgearld, told the officers that he possessed marijuana, a controlled substance, in an area known to be frequented by drug users and sellers, this provided the officers with—if not probable cause to arrest him for committing an offense in their presence[5]—reasonable suspicion that Falero was, had been, or soon would be engaged in criminal activity. *See Ford*, 158 S.W.3d at 492. Deferring to the trial court's evaluation of Officer Fitzgearld's credibility and the body camera video, we conclude that the trial court did not err by denying Falero's motion to suppress, and we overrule Falero's third issue.

## III. Jury Charge

A jury charge's purpose is to inform the jury of the law applicable to the case and to guide them in its application. *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

---

[5]*Compare* Tex. Health & Safety Code Ann. § 481.121 (marijuana possession), *with id.* § 481.111(e) (exemption to section 481.121 regarding low-THC cannabis under certain circumstances, added by the Legislature in 2015).

8

## A. Article 38.23 Instruction

Falero argues in his first issue that "whether he was in the room identified in the tip[] was a contested issue at trial on which there were two distinct sets of testimony." He complains that the trial court thus erred by refusing to give an Article 38.23 instruction on this issue during the trial's guilt-innocence phase. The State replies that, among other reasons, any such contested fact issue was not material to the lawfulness of Falero's detention because his initial encounter with the police was consensual.

Article 38.23(a) is a fact-specific exclusionary-rule instruction, and a defendant's right to that instruction is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Oursbourn v. State*, 259 S.W.3d 159, 173–74, 177 (Tex. Crim. App. 2008); *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007); *see* Tex. Code Crim. Proc. Ann. art. 38.23(a). A defendant must establish the following for an Article 38.23(a) instruction: (1) the evidence heard by the jury raises a fact issue; (2) the evidence on that fact is affirmatively contested; and (3) the contested factual issue is material to the challenged conduct's lawfulness in obtaining the evidence. *Oursbourn*, 259 S.W.3d at 177. If there is no disputed factual issue, the conduct's legality is determined by the trial court as a question of law. *Madden*, 242 S.W.3d at 510.

Although Falero contends that there was a factual dispute in the testimony about his presence in Room 10,[6] the basis for his detention, as set out above in our suppression analysis, was his admission during the consensual encounter that he had marijuana. *See Wade*, 422 S.W.3d at 669 (holding that appellant was not "seized" under the Fourth Amendment until he complied with the order to get out of his truck for a frisk). Accordingly, we conclude that the trial court did not err by deciding that an Article 38.23(a) instruction was not the law applicable to the case as to the question of Falero's presence or absence in Room 10. We overrule Falero's first issue.

## B. Non-statutory Instruction

In his second issue, Falero argues that the trial court impermissibly commented on the evidence's weight by including the non-statutory phrase "methamphetamine is a controlled substance" in the jury charge. Falero complains that because "controlled substance" is a statutory term of art with a specific definition, the trial court's instruction was erroneous both because it contained an improper comment on the weight of the evidence and because it included an incorrect definition.

While special, nonstatutory instructions generally have no place in the jury charge, *Morales v. State*, 357 S.W.3d 1, 5 & n.15 (Tex. Crim. App. 2011), and harm can result from an instruction that emphasizes a particular theory or the weight to be

---

[6]Both Officer Fitzgearld and Officer Laughlin testified that they saw Falero and the two others leave Room 10 at the Holiday Lodge. Falero testified, in contrast, that he had just knocked on the door of Room 10 to get his car keys from Alvarado and that he was trying to get into his car when he saw the officers come towards him.

given to a particular piece of evidence, *Barron v. State*, 353 S.W.3d 879, 884 (Tex. Crim. App. 2011), the trial court's instruction here was neither nonstatutory nor harmful because the Legislature has determined as a matter of law that methamphetamine is a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.002(5) (defining "controlled substance" as "a substance . . . listed in . . . Penalty Group 1"), § 481.101 ("For the purpose of establishing criminal penalties for violations of this chapter, controlled substances, including a material, compound, mixture, or preparation containing the controlled substance, are divided into Penalty Groups 1 through 4."), § 481.102(6) (listing methamphetamine as a substance in Penalty Group 1). Because the Legislature has made that determination, the trial court's statement, which merely consolidated the pertinent statutory language, was permissible.[7] *Cf. Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011) ("We have previously held that when only a portion of the statutory definition is relevant to the elements of the offense, giving the whole statutory definition may be error."). We overrule Falero's second issue.

## IV. Conclusion

Having overruled Falero's three issues, we affirm the trial court's judgment.

---

[7]As pointed out by the State, the fact question for the jury was whether the substance in Falero's pocket was methamphetamine, not whether methamphetamine is a controlled substance.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 23, 2020